10-0974.011					December 29, 2011

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| EUGENE WARREN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 10 C 0974 |
| | ) | |
| SALVADOR SORAPARU, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

At the conclusion of the evidence we granted the plaintiff's motion for judgment on the issue of liability and submitted the case to the jury on the question of damages only. The jury returned a verdict awarding the plaintiff $1,500.00 compensatory damages and $1,000.00 punitive damages. The defendant has made a motion for judgment as a matter of law or, in the alternative, for a new trial. This opinion will address that motion.

The defendant makes several arguments. First, he argues that the court applied the wrong standard in directing a verdict in that it failed to consider "the totality of circumstances." Under the "totality of circumstances" test, the defendant contends that he, not the plaintiff, was entitled to a directed verdict; or, at the very least, the case should have been submitted to the jury.

Secondly, the defendant asserts that the court applied the wrong test in regard to excessive force. He believes that he was

- 2 -

held to a duty of using the <u>most</u> reasonable degree of force to restrain the plaintiff, whereas the law requires only that the degree of force be reasonable, even though a lesser degree of force would also have been reasonable.

Third, the defendant contends that in explaining the directed verdict to the jury, the court made remarks that prejudiced him on the issue of damages.[1]

### The "Totality of Circumstances" Test

The defendant objects to the exclusion of the plaintiff's conduct in the parking lot prior to his being handcuffed. We have no argument with the proposition that the totality of circumstances must be considered. But it is the totality of <u>relevant</u> circumstances that must be considered. Granted, the plaintiff acted in an unruly, aggressive and bizarre manner in the parking lot at the time of his arrest. He even committed a battery upon Officer Soraparu. In excluding evidence of this behavior, both Judge Pallmeyer and the undersigned concluded that what the plaintiff did in the parking lot before he had been restrained with handcuffs behind his back was irrelevant to the question of what he was capable of doing in the interview room after one of his arms had been cuffed to a metal bar attached to the wall. Moreover, evidence of plaintiff's antics in the parking lot would obviously

---

[1] The defendant also makes other points, but these three are the ones we think require a response from the court.

- 3 -

have been highly prejudicial to him, and that prejudice outweighed any possible probative value the evidence might have had on the question of what force was appropriate in the interview room. (See Fed. R. Evid. 403.) We believe that we considered the totality of all relevant evidence on that issue, and the defendant has not pointed out anything that we missed.

## The Test for Excessive Force

The defendant argues:

> In considering claims of excessive force, the Seventh Circuit has previously ruled that the Fourth Amendment does not require an officer to use the least or even less forceful alternative so long as the use of force is reasonable.

(Def's. Mot. for J. at 10.) In support of this statement the defendant cites Plakas v. Drinski, 19 F.3d 1143, 1148 (7th Cir. 1994). We believe the defendant misunderstands the holding in Plakas. The plaintiff there was the administrator of the estate of Konstantino Plakas, who had been arrested in Newton County, Indiana for suspected drunken driving. Plakas was placed into the rear of the squad car with his hands handcuffed behind his back. As the squad car drove off, Plakas was able to jump out and run into nearby woods, ending up at the home of some people to whose daughter he was engaged. A number of officers, including David Koby, Jeffrey Drinski, and Mark Perras, and a paramedic, Glen Cain, followed him there, and Cain saw Plakas "push his legs through the

- 4 -

circle of his arms, bringing his cuffed hands to the front of his body." 19 F.3d at 1145. Following that,

> Plakas backed into a corner and neared a set of fireplace tools. He picked one of them up, a 2-3 foot poker with a hook on its end. Then gripping it with both hands, he continued screaming, louder and louder at Cain and Koby. Finally he rushed at Koby and swung quite hard at Koby, striking Koby's wrist with the poker. Koby moved away and tried to come in the room from another door, but Plakas chased him away, swinging the poker. Deputy Drinski passed by the injured Koby and asked him with what he was hit; Koby told him that Plakas had a poker. Inside the house, Plakas took the poker, slammed it into the wall and then beat his head against the wall. Cain left.

(Id.) Drinski and other officers followed Plakas out of the house. Drinski and Perras had their guns drawn. Plakas entered a clearing in some bushes and, for a quarter- to a half-hour, Drinski and Perras tried to talk him into surrendering. Id. at 1145-46. The situation went from bad to worse:

> At one point Plakas pointed the poker at Drinski and said, "Either you're going to die here or I'm going to die here." He also said, in substance, "Go ahead and shoot. My life isn't worth anything." Plakas often repeated these thoughts. Then Plakas tried to break through the brush. He turned back to Drinski who was 12 to 15 feet away and, with the poker raised, charged at Drinski who backed away. Drinski's retreat was involuntarily stopped, either by his backing into a tree or by a near stumble of some sort. Drinski believed he couldn't retreat because there was something behind him. He saw Plakas cock the poker over his head for a swing and, when Plakas was two arms lengths away, he fired once at Plakas' chest. The shot hit Plakas in the chest inflicting a mortal wound.

Id. at 1146.

- 5 -

Drinski, of course, became the defendant in the case. The plaintiff argued that there were alternative means short of shooting Plakas that Drinski could have used. Deputy Perras had a canister of CS spray on his belt. Services of the canine unit of a nearby county had been offered. The plaintiff also argued that the deputies could have tried to place barriers between themselves and Plakas and moved away from him. Id.

In response to these arguments the Court observed:

> We always judge a decision made, as Drinski's was, in an instant or two. It is true we consider the whole of the event as it appears to the officer involved, but we recognize that the decision to shoot can only be made after the briefest reflection, so brief that "reflection" is the wrong word. As Plakas moved toward Drinski, was he supposed to think of an attack dog, of Perras's CS gas, of how fast he could run backwards? Our answer is, and has been no, because there is too little time for the officer to do so and too much opportunity to second-guess that officer....Here we agree that the undisputed facts can lead to but one conclusion, that Drinski's use of deadly force was reasonable given Plakas's act of aggression and Drinski's knowledge of what had gone on before.

Id. at 1149-50. The Court affirmed the summary judgment that the trial court had granted in favor of Drinski.

Clearly, Plakas was a self-defense case. Drinski had no alternative under the circumstances except to use deadly force against Plakas. Officer Soraparu, by contrast, by his own account, was faced with no emergency and had plenty of time to think about how to handle the plaintiff's behavior in the interview room. The Plakas case in no way stands for the proposition that, where there

- 6 -

are alternatives that will inflict no injury, a police officer is free to use a degree of force that <u>will</u> inflict injury.  We held that in this case officer Soraparu's blow to the plaintiff's head when plaintiff was unable to attack the defendant or anyone else was unreasonable and therefore excessive as a matter of law.  We do not read <u>Plakas</u> as indicating otherwise.

**<u>The Court's Remarks to the Jury</u>**

The jurors were entitled to an explanation of why the question of liability was being withdrawn from them, and we gave an explanation which took pains to stress that we were making no comment on the remaining issue of damages.  The defendant has attached the transcript of those remarks as part of Exhibit D to his motion, and we quote the following excerpt from that transcript:

> Nothing I have said here is intended to indicate any opinion whatsoever as to damages.

(Def.'s Mot., Ex. D, at 32 (Tr. 307).)  Exhibit D stops at that page.  We requested the attorney for defendant to provide the remainder of the transcript, which she has done.  The relevant portion begins at the bottom of the last page in Exhibit D and continues on the following page (which is page 308 of the transcript):

> I express no opinion in my decision -- my decision to grant a judgment for plaintiff as a matter of law is not based on any distinction between the use of a head stun with an open palm or a gloved fist.

>      I express no opinion as to whether the plaintiff or the defendant is right about that.
>      I'm assuming for purposes of my directed verdict here, that what was used was the head stun, because that's the defendant's version, and he's entitled to have the Court base any decision like this one I'm making on his version of the occurrence.
>      All right.  We will now have closing arguments on the issue of damages.
>      Mr. Ray?
>      MR. RAY:  May I proceed, your Honor?
>      THE COURT:  Yes.

(Tr. at 307-308.)  Much of the dispute between the parties centered on whether the blow struck by the defendant was, as claimed by the plaintiff, with a gloved fist or, as claimed by the defendant, with an open hand.  The defendant contended that a slap with the open hand would not have caused the injury to plaintiff's eye. Defendant argued that the eye injury had probably been sustained in a fight the plaintiff had been in several days before his arrest. Defendant now argues:

> The Court's improper commentary regarding the explanation offered by the officers, in front of the jury was in error and improperly influenced the jury to infer that plaintiff's injuries were caused by defendant.

(Def.'s Mot. at 15.)  In the portion of the transcript omitted by the defendant's attorney, we made clear that we were expressing no opinion as to whether the defendant used an open hand or a gloved fist.  Defendant's attorney has given no examples of what she means by comments that indicated an opinion about damages, and we

- 8 -

conclude that the argument is simply unfounded.[2]  (We are also troubled by the attorney's omission from Exhibit D to her motion of the highly relevant last page of the transcript of the court's explanation to the jury.)

### The Significance of the Award of Punitive Damages

We gave the standard Seventh Circuit instruction on punitive damages, making clear that the jury "may, but [is] not required to" make an award of punitive damages.  The instruction emphasizes that such damages may be awarded only if the jury finds

> that the defendant's conduct was malicious or in reckless disregard of plaintiffs' rights. Conduct is malicious if it is accompanied by ill will or spite, or is done for the purpose of injuring plaintiffs. Conduct is in reckless disregard of plaintiffs' rights if, under the circumstances, it reflects complete indifference to plaintiffs' rights.

(Court's Instruction No. 13.)  In view of the fact that the jury found the defendant liable for punitive damages, we question whether there was any likelihood that they would have found in his favor on liability had the issue been submitted to them.  They found not simply that the defendant used excessive force but that he did so in a manner that warranted punitive damages.  They

---

[2]/ In our final instructions to the jury, we stated:

> Neither by these instructions nor by any ruling or remark I have made have I meant to indicate any opinion as to the facts or as to what your verdict should be.

(Court's Instruction No. 1.)

- 9 -

elected to punish him for it even though the injuries he inflicted were minor.

## Conclusion

The defendant's motion for judgment as a matter of law or in the alternative for a new trial [82] is denied.

DATE:     December 29, 2011

ENTER:    _____
          John F. Grady, United States District Judge